DeTROYER *v.* ERNST KERN CO.

1. WORKMEN'S COMPENSATION—ORDER SUSPENDING PAYMENT—SUBSEQUENT DISABILITY.

Order which approved agreement suspending payment of compensation and stipulating for right of plaintiff to petition department for further compensation for disability thereafter developing *held,* void as without statutory authority, the case being controlled by *Miller* v. *City Ice & Fuel Co.,* 279 Mich. 92.

ON REHEARING.

2. SAME—ALL WORDS IN SETTLEMENT AGREEMENT GIVEN EFFECT.

All of the words in a settlement agreement as to compensation between employer and employee, form for which was supplied by, and agreement as made approved by, the department of labor and industry are to be given effect.

3. SAME—AGREEMENT SUSPENDING PAYMENT OF COMPENSATION.

Settlement agreement between employer and employee, signed upon employee's return to employment in an attempt to rehabilitate himself, suspending payment of compensation and not terminating its payments *held,* not to violate either the spirit or letter of the workmen's compensation law nor to preclude recovery of further compensation upon the continuance or reappearance of disability though not greater than existed at time agreement was entered into to suspend payments.

Appeal from Department of Labor and Industry. Submitted April 21, 1937. (Docket No. 116, Calendar No. 39,166.) Decided June 7, 1937. Submitted on rehearing October 5, 1937. Decided December 29, 1937.

Bea DeTroyer presented her claim for compensation against Ernst Kern Company, employer, and

St. Paul Mercury Indemnity Company, insurer, for injuries suffered in defendant's employ. Award to plaintiff. Defendants appeal. Affirmed.

*Dann & Atlas,* for plaintiff.

*Kerr, Lacey & Scroggie,* for defendants.

Butzel, J. Plaintiff, after receiving compensation for about four weeks under an approved agreement, signed a document on the form supplied by the department entitled, "supplemental agreement suspending further payment of compensation," in which there is contained a stipulation that if further disability from the injuries should thereafter develop, the agreement would not bar plaintiff's right to petition the department for such further and added compensation as she may be entitled to. Shortly after the agreement was approved by the department of labor and industry, plaintiff filed a petition asking for further compensation, alleging that she was still disabled and under the care of a doctor. Testimony was taken and compensation allowed. Defendants on appeal complain that plaintiff was not entitled to further compensation without alleging and proving a subsequent change in her physical condition showing a greater disability than existed at the time the agreement to suspend compensation was entered into.

The same question was presented in *Miller* v. *City Ice & Fuel Co.,* 279 Mich. 592, wherein the majority opinion of the court held against defendants' contentions.

The award is affirmed, with costs to plaintiff.

Fead, C. J., and North, Wiest, Bushnell, Sharpe, Potter, and Chandler, JJ., concurred.

## On Rehearing.

Butzel, J.   In the former hearing in this case, we followed the decision in *Miller* v. *City Ice & Fuel Co.,* 279 Mich. 592.   Rehearings of both the *Miller Case* and of the instant case were granted.*   Certain other aspects of the contract involved in the controversy have been presented and we modify the views thereof, heretofore expressed, but without changing the result.   Plaintiff was awarded compensation for a compensable accident.   She later signed an agreement suspending compensation, but thereafter, as the department found, she was still incapacitated. She was awarded further compensation without a showing of greater disability.   The question resolves itself into whether or not an employee who has received compensation, the payment of which is later suspended by agreement, thereafter may be awarded further compensation without a showing of greater disability than that existing at the time of the execution of the suspension agreement.   We are again asked to construe the agreement suspending compensation.

The pertinent provisions of the agreement are as follows:

"And it is now agreed that in the opinion of all the parties hereto, that disability has ended, and that because thereof payment of all further compensation shall stand suspended from and after the 24th day of January, 1936.

"It is further agreed that if further disability from such injuries shall hereafter develop, this agreement shall not bar the plaintiff's rights to petition the department for such further and added compensation as he may be entitled to; that on the

* Pending decision of the *Miller Case* on rehearing, stipulation dismissing same was filed on January 7, 1938.—Reporter.

hearing of such petition the plaintiff shall bear the burden of proof, and the department shall determine such petition according to the facts.''

It is claimed by defendant that the approval of an agreement of this nature is equivalent to approval of a final settlement receipt, in which event it would be necessary for the employee to show a change of condition in order to entitle her to further compensation. Plaintiff, however, contends that such a meaning would be contrary to the express terms of the agreement, which only provides for a ''suspension'' of payments and states that it ''shall not bar the plaintiff's rights * * * for such further and added compensation as she may be entitled to.'' The agreement itself is headed ''Supplemental agreement suspending further payment of compensation.'' It states that the form was furnished by the department of labor and industry. It is not a trick agreement in any sense of the word. An employee, however, might be tricked by its wording if it is construed as a final settlement agreement. An employee is warned of the finality of a final settlement agreement by a statement in large letters on the form of such agreement as supplied by the department. No such warning is found on the form of the agreement before us.

Defendant asks that the words ''suspending payment'' be nullified and such part of the agreement as is favorable to defendant be adopted and the remainder stricken as surplusage. All the words in an agreement are to be given effect. The understanding which an employee and an employer would reasonably gain from the terms of the agreement would be that, as far as the parties are aware, the employee is able to work, but that if any disability caused by the accident arises later, the employee will

be entitled to further compensation. The sole question resolves itself into whether or not the agreement suspending compensation, thus construed, is against the spirit and wording of the compensation act. We believe it is not.

Defendant's contention is supported by *Carpenter v. Detroit Forging Co.,* 191 Mich. 45, wherein we stated on an entirely different statement of facts, that the statute contemplated an agreement and settlement made without contingency or condition and not one based upon a possible or probable event that may render it inoperative. This statement was not necessary to the decision, moreover the agreement to pay further compensation was oral and was not filed with nor approved by the board,* and could not have been effective in any case.

We do not believe that the agreement suspending compensation violates either the spirit or letter of the compensation law. In *Seem* v. *Consolidated Fuel & Lumber Co.,* 234 Mich. 637, we held that a conditional approval of an agreement was not *res judicata* of the fact of disability and did not deprive the department of further jurisdiction without a showing of change of physical condition, where the department did not pass upon the employee's physical condition, but conditionally approved the agreement in recognition of the fact that the employee was being paid a salary as a night watchman. The opinion of the department in that case distinctly stated that there was never an approval by the department of the final settlement claimed by the defendant. Likewise in the instant case, the department only approved of an agreement suspending compensation and not terminating compensation.

* The powers and duties of the industrial accident board have been transferred to the department of labor and industry and the board abolished. See 2 Comp. Laws 1929, § 8312.—Reporter.

The purpose of the law is not only to compensate the employee while he is incapacitated, but also to encourage him to rehabilitate himself. This can be accomplished by his going back to his regular work or by giving him less strenuous work or a "made job," and thus permit him to try to return to gainful employment. It would be a harsh and inhuman rule which would hold that his attempt at rehabilitation or his mistaken belief that he may have recovered precluded him from obtaining further compensation, upon the continuance or reappearance of disability, though not greater than existed at the time the agreement to suspend payments was entered into. To uphold the agreement to suspend compensation is wholly within the spirit of the law. It is for the benefit of both parties. To hold otherwise would encourage malingering or would deter an honest employee from making an effort to return to work and thus end compensation payments, if any doubt existed on his part as to whether he had completely recovered. It is in the interest of the employer, the employee, and the public to have the employee return to gainful employment as soon as possible. If the employee has not yet recovered from disability but believes that he can resume his former occupation, or do lighter work, and if the signing of an agreement suspending compensation is not one of final settlement, he will more willingly attempt to take his place as a useful member of society. The spirit of the law is set forth in our opinion, written by Mr. Chief Justice FEAD, in *Markey* v. *S. S. Peter & Paul's Parish,* 281 Mich. 292, wherein it is said:

"But when, after such reduction or stopping of compensation by reason of employment and not because of a recovery of physical capacity to work,

the employee seeks to have compensation restored by reason of the fact that he has lost his employment, it would be grossly unjust to require him to make a showing of actual change of physical condition. Such a ruling would discourage attempts at rehabilitation by imposing an unfair hazard thereon. In *MacDonald* v. *Great Lakes Steel Corp.*, 274 Mich. 701, it was held that where a disabled employee had had employment, compensation was stopped therefor and he had lost his employment, the commission would be justified in holding that the employment had established a *prima facie* earning capacity, but 'the ruling does not require the employee to show a change of physical condition after his discharge. Nor does it prevent his showing his actual earning capacity after the employment ceases, as affected by his physical condition, his ability to work, the market for his labor and other pertinent circumstances.' "

Subject to the modification by upholding the agreement and giving effect and meaning to all its terms, the case is again affirmed on rehearing, with costs to appellee.

Fead, C. J., and North, Wiest, Bushnell, Sharpe, Potter, and Chandler, JJ., concurred.