STAGGS v GENESEE DISTRICT LIBRARY

Docket No. 134179. Submitted October 14, 1992, at Lansing. Decided December 21, 1992, at 10:00 A.M. Leave to appeal sought.

Adrian Staggs sought workers' compensation benefits from Genesee District Library and its insurer, Cincinnati Insurance Company, after injuring his back and right hip at work and undergoing medical treatment that included a myelogram whose side effects resulted in disability. A hearing referee of the Bureau of Workers' Disability Compensation denied benefits. The Workers' Compensation Appeal Board reversed, and awarded the plaintiff benefits. The defendants appealed by leave granted.

The Court of Appeals *held:*

A disability resulting from reasonable medical treatment of a work-related injury entitles the disabled worker to workers' compensation benefits, even where the injury itself did not result in the disability.

Affirmed.

*Vigiletti & McCrandall, P.C.* (by *Susan A. McCrandall*), for the plaintiff.

*Ackerman & Severyn, P.C.* (by *Thomas J. Severyn*), for the defendants.

Before: MURPHY, P.J., and GRIBBS and FITZGERALD, JJ.

MURPHY, P.J. Defendants Genesee District Library and Cincinnati Insurance Company appeal from an order of the Workers' Compensation Appeal Board reversing a decision of a hearing referee and awarding benefits to plaintiff, Adrian Staggs. We affirm.

On June 23, 1984, while working for defendant Genesee District Library as a library technical assistant, plaintiff tripped over a floor grate and

fell into some shelving and onto the concrete floor. Shortly thereafter, plaintiff felt sharp pains in his back and right hip. Plaintiff was subsequently off work until December 6, 1984, during which time he received benefits. Also during this time, plaintiff sought medical treatment for persistent back pain. The treatment included a myelogram on November 9, 1984. Unfortunately, the myelogram caused plaintiff serious side effects, including nausea, headaches, and double vision. As a result, plaintiff was hospitalized for nine days. The side effects of the myelogram persisted and, consequently, plaintiff is only able to return to work with restrictions, which the library apparently cannot accommodate.

Plaintiff applied for workers' compensation benefits, alleging personal injury and occupational disease beginning June 23, 1984, due to lower back injuries and complications from the myelogram. It is basically undisputed that plaintiff sustained a work-related injury when he fell in June 1984 and that the myelogram was performed because plaintiff's symptoms persisted. However, evidence was presented before the hearing referee that the June 1984 fall had not caused or aggravated plaintiff's longstanding orthopedic problems. Evidence was presented that plaintiff had a pin surgically placed in his right hip during childhood because of a congenital condition, and that plaintiff thereafter periodically experienced pain in that hip. Hospital records indicated that plaintiff had been in an automobile accident in 1980, which resulted in plaintiff having a back spasm. Plaintiff also injured his back in 1982 while bending down to load books while working for the library. After bed rest was prescribed and plaintiff was off work for six weeks, all symptoms had cleared up. Plaintiff also injured his hip in November 1983 during a fall

that was not related to work. Dr. Gutscher, who treated plaintiff shortly after the June 1984 fall, opined that, although the fall caused plaintiff back pain at the time, plaintiff's current back and hip problems were related to degenerative disc disease and degenerative arthritis. Dr. MacNeil, an expert retained by defendants, examined plaintiff after the fall, found no link between the fall and the persistent back condition, and opined that the symptoms arising from the strain caused by the fall should have been resolved by October 1984.

The hearing referee denied plaintiff benefits, finding that plaintiff was not disabled from performing his last job and that the June 1984 injury did not contribute significantly to plaintiff's long-standing orthopedic problems. The WCAB reversed the decision of the hearing referee and awarded plaintiff benefits. The WCAB found that, although the June 1984 fall neither caused nor aggravated the back condition, the injury was compensable because plaintiff was disabled by complications resulting from the myelogram that was performed because of the persistent symptoms following the June 1984 fall. Specifically, the WCAB found "[t]he myelogram was a diagnostic procedure used only because of the persistence of symptoms following the June of 1984 incident."

Defendants contend that the WCAB erred as a matter of law in reversing the decision of the hearing referee and awarding benefits to plaintiff. Defendants argue that, because the WCAB found that plaintiff's fall in June 1984 did not cause or aggravate plaintiff's condition to the point of disability, disability arising from the treatment of that injury could not entitle plaintiff to compensation.

Our review of administrative agency findings is minimal and involves a determination whether

they are supported by competent evidence on the record. *Holden v Ford Motor Co,* 439 Mich 257, 263; 484 NW2d 227 (1992); *Boden v Detroit Lions, Inc (On Remand),* 193 Mich App 203, 206; 483 NW2d 673 (1992). Absent a showing of fraud, findings of fact of the WCAB are conclusive. MCL 418.861; MSA 17.237(861); *Boden, supra,* 206; *Williams v Cleveland Cliffs Iron Co,* 190 Mich App 624, 625; 476 NW2d 414 (1991). Where the final administrative decision in workers' compensation proceedings is based upon a careful examination of the record, is duly cognizant of the deference to be given the decision of the magistrate (or in this case, hearing referee), does not misapprehend or grossly misapply the substantial evidence standard, and gives an adequate reason grounded in the record for reversing the decision of the magistrate, the judicial tendency should be to affirm. *Holden, supra,* 269. This Court will, however, reverse a decision of the WCAB if the WCAB operated within the wrong legal framework or based its decision on erroneous legal reasoning. *Maxwell v Procter & Gamble,* 188 Mich App 260, 265; 468 NW2d 921 (1991).

To be entitled to workers' compensation benefits, a plaintiff must establish by a preponderance of the evidence a continuing work-related disability. *Aquilina v General Motors Corp,* 403 Mich 206, 211; 267 NW2d 923 (1978); *Maxwell, supra,* 265-266. Causation is a question of fact. *Id.,* 266; *Nezdropa v Wayne Co,* 152 Mich App 451, 461; 394 NW2d 440 (1986). In this case, the disability was produced by the myelogram that was performed because plaintiff had persistent symptoms after the work-related fall. The question is therefore whether a disability resulting from medical treatment necessitated by a work-related accident entitles plaintiff to benefits.

While this precise question has not been decided in this state, there is some authority indicating that where medical treatment is necessitated by a work-related injury, and the medical treatment results in a disability, the claimant is entitled to benefits because the subsequent disability is traceable to the work-related injury. In *Sanders v General Motors Corp,* 137 Mich App 456, 463; 358 NW2d 611 (1984), the plaintiff injured her knee while at work and as a result was partially disabled. The plaintiff eventually underwent surgery for the injury, but the surgery was unsuccessful and resulted in the plaintiff being totally disabled. The plaintiff filed for benefits, alleging that the date of injury should be the date of the unsuccessful surgery. This Court determined that the date of injury was the date the plaintiff was actually injured at work, and not the date of the subsequent surgery. This Court reasoned that the earlier injury occurred during the course of employment, and that the later injury was directly related to and was a consequence of the work-related injury. The plaintiff was entitled to benefits because of the traceable relationship between the medical care and the work-related injury. *Id.,* 463. See also 1 Larson, Workmen's Compensation Law, § 13.11, pp 3-502 to 3-503.[1]

In this case, the WCAB found that plaintiff's current back and hip problems were neither caused nor aggravated by the 1984 fall, but that the work-related fall caused plaintiff to seek medical treatment, including the myelogram that caused plaintiff's disability, and that plaintiff was therefore entitled to benefits. Defendants argue

[1] We acknowledge our Supreme Court's criticism of Larson in *Dean v Chrysler Corp,* 434 Mich 655; 455 NW2d 699 (1990), but note that factual distinctions of the instant case make Larson's discussion applicable.

that, because plaintiff's back condition was neither caused nor aggravated by the fall, an injury resulting from medical treatment cannot be traced to a work-related injury. Defendants, however, confuse plaintiff's preexisting health problems with the fact that plaintiff sought medical treatment as a result of pain experienced after the work-related fall and while plaintiff was receiving benefits for the disability arising from the fall. While we agree that under these circumstances plaintiff cannot recover benefits due to his preexisting back and hip problems, the disability resulting from the myelogram can be traced to the work-related fall that caused plaintiff to seek the medical treatment. We therefore hold that where the reasonable treatment of a work-related injury results in disability, the injured employee is entitled to benefits, even if the underlying injury did not itself result in that disability.

We distinguish *Dean v Chrysler Corp,* 434 Mich 655; 455 NW2d 699 (1990), in which the injury, sustained in a motor vehicle accident while en route for treatment for a compensable injury, was not itself compensable under the workers' compensation act. *Dean* did not involve disability resulting from medical care necessitated by a work-related injury and is therefore factually distinct. Additionally, *Dean* focused on the integration of the workers' compensation system and the no-fault automobile insurance system to provide compensation to the injured employee, as well as the legislative intent to allocate costs between the two systems. This consideration is not brought into play in this case where compensation is sought for the medical consequence of treatment for a work-related injury.

Affirmed.